***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Upon conclusion of its review, the Full Commission affirms the Opinion and Award of the Deputy Commissioner with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. That all parties are properly before the Industrial Commission and that the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. That all parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. That all parties have been correctly designated and that there is no question as to the joinder or non-joinder of parties.
4. That the Plaintiff sustained a compensable injury to his right arm on or about January 9, 1999. Defendants are currently paying weekly compensation at the rate of $560.00 per week.
5. That the employees who have been employed in the Bar Code Technician job have all had injuries restricting them to light duty with limited lifting, working overhead, and walking.
6. That all the employees who have been employed in the Bar Code Technician job have had workers' compensation injuries and have restrictions such that they could not go back to their previous employment.
7. That Betty Smith, who has been employed in the Bar Code Technician job, had a workers' compensation injury, is 41 years old, has a high school education, was injured on June 28, 2003, and previously worked as a Production Specialist in the Tire Room.
8. That Richard Owen, who has been employed in the Bar Code Technician job, had a workers' compensation injury, is 59 years old, has a high school education, was injured on March 4, 2005, and previously worked as a staff employee in the PE lab. *Page 3 
9. That Lois Meadows, who has been employed in the Bar Code Technician job, had a workers' compensation injury, is 39 years old, has an associate degree in criminal justice, was injured on August 10, 2004, and previously worked as a senior Production Operator in Curing.
10. That Bobby Fenner, who has been employed in the Bar Code Technician job, had a workers' compensation injury, is 38 years old, has a high school education, was injured on August 28, 2003, and previously worked as a Production Specialist in the Tire Room.
11. That David Joyner, who has been employed in the Bar Code Technician job, had a workers' compensation injury, is 49 years old, has a high school education, was injured on June 20, 2002, and previously worked as a Production Operator in Calendaring.
12. That the staff position that was previously done by Richard Owen paid approximately $1,000 less per month than he is getting paid as a Bar Code Technician.
13. That Pat Stillman performed the Bar Code portion of the job from September 1, 2001 to August 1, 2004 when it was a staff position. She did not perform the Tag Labeler job, and she was a staff person who worked from 8:00 a.m.-5:00 p.m., Monday through Friday.
 *********** ISSUES
1. Whether the Bar Code Label Technician position offered to Plaintiff by Defendant-Employer in July of 2005 constituted an offer of suitable employment?
2. If so, whether Plaintiff unjustifiably refused the Bar Code Label Technician position in or about July of 2005?
3. Whether Plaintiff is disabled?
4. Whether Defendants may suspend payment of temporary total disability compensation? *Page 4 
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
1. Exhibit 1: Executed Pre-Trial Agreement and Addendum thereto
2. Exhibit 2: Documents regarding July 2005 job offer
3. Exhibit 3: Photographs of Bar Code Technician job
4. Exhibit 4: Vocational rehabilitation records
5. Exhibit 5: Plaintiff's medical records, including transcript of the August 30, 2002 deposition of Dr. Billy K. Huh
6. Exhibit 6: Audiotape of telephone conversations between Plaintiff and rehabilitation professional Vickie Dixon
A transcript of the deposition of the following was also received post-hearing:
• Dr. Huh (deposition taken August 14, 2006)
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 52 years old. Following his graduation from high school, he entered the military and was educated by the Navy and Air Force. Following his retirement from the military in 1994 after over 18 years of service, Plaintiff drove a tractor-trailer for two years. Plaintiff then started working with Defendant-Employer on a permanent basis in 1996.
2. On June 9, 1999, Plaintiff was working as a Production Operator in Defendant-Employer's Wilson plant, at an hourly wage of $21.00, when he sustained a compensable injury. *Page 5 
As Plaintiff was attempting to clear a "jam-up" in a machine, his right arm was pinned between a tire and a bolt on the machine. The bolt punctured Plaintiff's forearm just below the elbow, causing nerve damage.
3. Plaintiff was eventually diagnosed with ulnar neuropathy, and Dr. Huh ultimately inserted a spinal cord stimulator on March 20, 2003 to address Plaintiff's chronic intense pain.
4. Following the insertion of the spinal cord stimulator, Plaintiff has found his right arm pain typically to be more bearable, although he still experiences pain.
5. Except for some brief periods during which Plaintiff attempted unsuccessfully to return to work with Defendant-Employer, Defendants have paid Plaintiff temporary total disability compensation during the entire period since his injury.
6. On May 8, 2003, Dr. Huh released Plaintiff to return to work with restrictions of no lifting greater than 20 pounds, no extreme bending, stooping or lifting above the head, avoidance of high powered magnetic fields or electric power sources, and limitation of work to no more than eight hours per day. Dr. Huh made these restrictions permanent on August 19, 2003.
7. Defendants initiated vocational rehabilitation in January 2004, retaining Southern Rehabilitation Professionals, Inc. Rehabilitation professional, Vickie Dixon, MS, CRC, LPC was assigned to the case.
8. Plaintiff met with Ms. Dixon on a weekly basis, utilizing the Employment Security Commission's job listings, the Internet, newspaper listings and word-of-mouth to attempt to find suitable employment. Despite a good faith effort, Plaintiff was unable to secure suitable employment. Although he had many interviews and came close to having some offers, *Page 6 
Plaintiff found that potential employers lost interest when they learned of his medical restrictions and the spinal cord stimulator.
9. In January 2005, Defendants instructed Ms. Dixon to close her file on Plaintiff, and they discontinued vocational rehabilitation.
10. At $21.00 per hour, Plaintiff's pre-injury annual pay, based on a 2000-hour year, was $42,000.00. As Ms. Dixon testified, it was not realistic to expect any other potential employer in Wilson County or any of the adjacent counties to match Defendant-Employer's wages. As she further testified, there were not many jobs in the local economy for which Plaintiff qualified that would have paid Plaintiff close to what he was making with Defendant-Employer before his injury; consequently, Ms. Dixon had asked Plaintiff to apply for jobs that paid in the range of $10-$12 per hour.
11. In early July 2005, Defendant-Employer offered Plaintiff a full-time position in its Wilson plant as a Bar Code Label Technician. Plaintiff, through his attorney, expressed his concern that similar jobs were not available in the marketplace and that, if he were to be "let go," he would be unable to find comparable employment. As such, Plaintiff turned down the job offer.
12. In a letter dated August 5, 2005, Defendant-Employer notified Plaintiff that, if he did not report to work in the Bar Code Label Technician position by August 11, 2005, his employment would be terminated. Plaintiff did not report to work.
13. The Bar Code Label Technician at Defendant-Employer's plant is basically responsible for ensuring that the inventory of bar code stickers and inventory tags are adequately stocked. The job is performed in an office-type environment, with minimal physical requirements. Mainly, the Bar Code Label Technician inputs data in a computer and operates a *Page 7 
printer to print the labels and tags, then stocks the labels and tags on boards, where personnel from throughout the plant retrieve the labels and tags for their use on both raw materials and finished tires.
14. Prior to July 2005, the functions of the Bar Code Label Technician job at the plant were divided between two separate positions, each of which was performed by a "staff person" or a contractor. Each job paid about $13.50 per hour, which was not production-level pay. In July 2005, the plant decided to combine the two jobs and to have one Bar Code Label Technician assigned to each crew on a rotating shift basis, so that each crew would be supported continuously with bar codes and labels. The new position was classified at production-level pay, paying about $20.50 per hour.
15. As of the date of the Deputy Commissioner's hearing, Defendant-Employer had four employees working as Bar Code Label Technicians. These employees (Ms. Smith, Ms. Meadows, Fenner and Owen) are referenced in the Stipulations set out above. All were placed in the position following workers' compensation injuries and received preference for the position, pursuant to company policy, because they were employees under medical work restrictions.
16. Prior to filling the Bar Code Label Technician position, Ms. Smith, Fenner and Meadows all were making $23 per hour in senior production level positions at the plant.
17. Although necessary to Defendant-Employer's operation, the Bar Code Label Technician job appears to have been open only to employees of Defendant-Employer who are injured and under medical work restrictions.
18. Plaintiff began taking community college courses in 2004, starting with computer and math courses and progressing to an environmental sciences curriculum. Plaintiff anticipated graduating in the fall of 2007 and wanted to pursue employment in a wastewater-testing lab. *Page 8 
Since Defendants' terminated vocational rehabilitation, Plaintiff has continued looking for suitable employment two to three times per week but has not secured employment.
19. Defendants produced no evidence to show that employers other than Defendant-Employer would pay comparable wages to that paid by Defendant-Employer for a position comparable to the Bar Code Label Technician.
20. The Full Commission finds that the position of Bar Code Label Technician is not ordinarily available in the competitive labor market and is not a job that other employers would hire plaintiff to perform at a comparable wage. Accordingly, plaintiff did not unjustifiably refuse the Bar Code Label Technician position.
21. Plaintiff reached maximum medical improvement some time ago. However, Plaintiff will require monitoring by a pain management specialist for the foreseeable future to replace the batteries in his spinal cord stimulator and possibly to prescribe pain medication.
22. Defendants filed a Form 24 Application on December 27, 2005, contending that Plaintiff unjustifiably refused suitable employment when he turned down the Bar Code Label Technician job. Special Deputy Commissioner Elizabeth M. "Lacy" Maddox disapproved the Form 24 Application by Order filed March 3, 2006, based on Defendants' failure to submit any documentation showing that other employers would hire Plaintiff to do a similar job at a comparable wage.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following: *Page 9 
 CONCLUSIONS OF LAW
1. On June 9, 1999, plaintiff sustained a compensable injury by accident to his right arm arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. In Peoples v. Cone Mills Corp., 316 N.C. 426, 342 S.E.2d 798, (1986), the North Carolina Supreme Court stated:
 If the proffered employment does not accurately reflect the person's ability to compete with others for wages, it cannot be considered evidence of earning capacity. Proffered employment would not accurately reflect earning capacity if other employers would not hire the employee with the employee's limitations at a comparable wage level. The same is true if the proffered employment is so modified because of the employee's limitations that it is not ordinarily available in the competitive job market.
Id. at 438, 342 S.E.2d at 806. In the present case, the Bar Code Label Technician position is not a job that other employers would hire plaintiff to perform at a comparable wage. As such, the position was not available in the competitive job market and plaintiff's refusal to perform it was justified.
3. Defendant admitted the compensability of plaintiff's injury by accident to his right arm by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v.Charmes/Arby's Roast Beef, 142 N.C. App. 154, 542 S.E.2d 277 (2001).
4. In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is *Page 10 
physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. Perdue Farms, Inc., 143 N.C. App. 259,545 S.E.2d 485 (2001); Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
5. Plaintiff remains disabled in that he has shown that he is capable of some work but has, after a reasonable effort, been unsuccessful in his efforts to obtain employment. N.C. Gen. Stat. § 97-2(6); Russell v.Lowe's Product Distribution, supra.
6. When a plaintiff meets his burden of showing disability, the burden then shifts to defendant to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra. Defendants have not carried this burden.
7. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the undersigned makes the following: *Page 11 
 AWARD
1. Subject to an attorney's fee hereinafter approved, defendants shall continue to pay to plaintiff temporary total disability compensation at the rate of $560.00 per week until further Order of the Commission.
2. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of his injury by accident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability, including but not limited to treatment with Dr. Huh, diagnostic testing, prescriptions, battery replacement for the spinal cord stimulator as needed, mileage and referrals. N.C. Gen. Stat. § 97-25.1.
3. An attorney's fee of 25% of the compensation awarded in paragraph 1 above is approved for plaintiff's counsel.
4. Defendants shall pay the costs.
This the __ day of August 2008.
 S/___________________
 DANNY L. McDONALD
 COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 12 
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1